```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re

        William K. Walsh                                Case No. 05-26595 K
                        Debtor
------------------------------------------------------------------
Michael H. Arnold
                        Plaintiff

             -vs-                                       AP No. 06-2045 K

Lisa Walsh
                        Defendant
------------------------------------------------------------------
```

William E. Brueckner, Esq.
180 Canal View Boulevard, Suite 600
Rochester, NY   14623

Attorney for Plaintiff


William J. MacDonald
2526 Browncroft Blvd.
Rochester, NY   14625

Attorney for Defendant

## OPINION AND ORDER

The Chapter 7 Trustee has moved for Summary Judgment in this 11 U.S.C. §§ 544, 548 Adversary Proceeding against the Debtor's wife.

Other than as to the question of solvency at the time of the transfer, certain facts are not in dispute, and as to that question, the Trustee believes that he is entitled to a finding in his favor as a matter of law.

The question presented is whether the Defendant is entitled to a trial upon the

following facts:

The Debtor owned a golf equipment shop since February of 2003. He was very active in the promotion and development of a new golf course to which his shop would eventually be relocated. He had bought what he believed to be a $50,000 equity interest in the LLC that was building the golf course, and had solicited $2,000,000 for the LLC from other such "founders" of the golf course. He also was on the LLC's payroll. The "prime mover" of the project, Mr. Roth, died unexpectedly in 2004, and Roth's nephew was appointed Executor of Mr. Roth's estate and took over Roth's controlling interest in the LLC. It appears that if Mr. Roth had lived, he would have committed his substantial personal wealth to see the project through, but the Executor did not make that commitment. Rather, work came to a halt and the uncompleted project went up for sale.

The Debtor asserts that he in fact put over $700,000 overall into the project, using, among other things, revenues from his shop.

At least two substantial purchase prospects for the LLC surfaced, but they evaporated, for one reason or another.

By June of 2005, the Debtor needed cash. He sold the marital home, that he had owned before his 1999 marriage and that he had kept in his own name, to a friend for $115,000. From the net proceeds of the sale, he transferred, on June 29, 2005, $48,000 to his wife, who is the Defendant here. That amount was 90% of the net proceeds from the sale.

The Defendant continued to make those moneys available to the Debtor in his efforts to keep his business running and to help salvage the LLC. (And to pay rent to the friend

who bought the residence, in which they continued to reside.)

But in October, 2005, he filed Chapter 7, scheduling over $300,000 in trade debt. The shop had closed. He scheduled as an asset a $704,000 claim against the Roth estate.

To all appearances, the semi-completed golf course is now defunct and the LLC moribund.

The Trustee seeks the $48,000 transferred to the Defendant.

To the extent that the Trustee's action is premised on "actual intent to hinder, delay or defraud creditors," the Defendant correctly points out that "actual intent to defraud" is uniquely unsuited to decision upon papers. And the Trustee's Motion is denied, to that extent.

However, the "constructive fraudulent transfer" claims are not beyond resolution "on papers" in some cases.

Is this such a case?

## THE DEFENSES

The Defendant offers several interesting arguments, among which are - -

1. During the marriage, she had acquired an "equitable ownership" in the house, such as to constitute prior, fair consideration for the $48,000 she received from its proceeds.

2. There was never really any "transfer" at all, because she made the $48,000 readily available to the Debtor for his business purposes.

3. The Debtor was solvent at the time of the transfer because of his ownership interest in, and his claims against, the LLC and its substantial golf course project that was still *in*

*vitro* at that time.


## ANALYSIS

Analysis begins with the cases addressing intra-family transfers - - a subject on which this Court has often written.

There can be no doubt that intra-family transfers by an insolvent, in consideration of <u>future</u> support, are presumptively fraudulent at the time of the transfer. See *In re Skalski*, 267 B.R. 707, 710 n.2, 711 (Bankr. W.D.N.Y., 2001).

Intra-family transfers in consideration of <u>past</u> consideration are a different matter, requiring very clear proof in favor of the transferee. See *In re Wallace v. Kotowski (In re Dziadosz)*, Case No. 97-11056-K, Adv. No. 98-1355 (Bankr. W.D.N.Y. June 23, 1997).

Here the first defense is based on the theory that past consideration gave the transferee an "equitable ownership" of the property transferred. As to the law of "equitable liens" and "constructive trusts" upon real estate in New York, see *In re Religa*, 157 B.R. 54, 60 (Bankr. W.D.N.Y. 1993).

The factors by which the Defendant claims "equitable ownership" of the house are:

- - The Defendant's co-signature on a 2002 refinancing on the house that she did not own.

- - The Defendant's "direct and indirect spousal contributions as a spouse, parent and homemaker."

The Court rejects this argument. The Defendant seeks to transplant cases, arguments and theories, heretofore considered only in disputes within the marriage or within a nuclear or extended family, into the "Statutes of Elizabeth" regarding fraudulent transfers, the focus of which has always been since ancient times the rights of <u>creditors of the transferor</u>. As explained in *In re Kurowski (In re Buffalo Restaurant Equipment, Inc.)*, 284 B.R. 770, 776 (Bankr. W.D.N.Y. 2002), the Statute of Elizabeth grew out of the "Law Mercantile." This case would fit nicely into the ancient historical setting. A businessperson who is in debt places assets beyond the reach of business creditors. (Contrast the case of *In re Bergman*, 293 B.R. 580 (AP No. 02-1137 K) (Bankr. W.D.N.Y. 2003) where a person just setting-out into the business world "did it right" in transferring her interest in the marital home to her husband. Contrast it also to the advice in *Skalski*: to make sure when accepting a substantial intra-family transfer that the transferor spouse (or parent, etc.) will be left solvent.)

In sum, to accept the notion of "equitable ownership" by a spouse/transferee as against the <u>creditors</u> of the transferor would stand the ancient law of Fraudulent Transfers on its head. That defense is rejected, in that it has no application as against the Debtor's <u>creditors</u>, given that the elements of an "equitable lien" or "constructive trust," as explained in *Religa*, are not even suggested here.

Next is the defense that there never really was a transfer, because the Defendant made the transferred funds fully available to the Debtor towards his attempts to pay his debts.

If every penny of that $48,000 went to the Debtor's efforts to pay his debts (by

advancing the golf course project),[1] the argument fails in part and succeeds in part. To the extent that it fails, it does so for reasons that might be particularly incident (though not unique) to bankruptcy cases. If a creditor of the Debtor had promptly learned of the sale of the home and the transfer of proceeds to the spouse, and had promptly commenced an action under the New York Debtor and Creditor Law §§ 270-281, there can be no doubt (presuming insolvency) that such a creditor would be entitled to recover the money for payment of that particular creditor's debt. The fraudulent transferee could not be heard to say, "Look, I'll decide which of the transferor's creditors will get paid." That did not happen, but as this writer stated (in a different capacity), nearly 30 years ago.

> [The] bankruptcy laws may be described as embodying, in essence, a mandatory exercise of all available state, and other, remedies in order to defeat claims against the debtor's estate, and to nullify particular transfers made, or obligations incurred, by the debtor. For example, prior to bankruptcy the mere existence of a remedy under State Law by which a creditor might nullify a fraudulent or preferential transfer of the debtor's property is, as a practical matter, of no consequence where the eligible creditor does not seek to avail himself of that remedy; the property that has been transferred no longer belongs to the debtor and cannot be reached by other creditors. In bankruptcy, however, where appropriate, the utilization of such a state remedy is not only possible, but is virtually commanded where it would be useful (though it will be utilized in the federal, rather than the state, forum). Moreover, the bankruptcy laws provide such remedies where the state provides none, where there is no actual creditor eligible to avail himself of such a remedy, and even where the interest to be thus nullified is an interest bestowed expressly by state law. In this manner, bankruptcy injects into certain pre-bankruptcy relationships a degree of "certainty" for the persons who have derived the benefit of the vulnerable transfer or

---

[1] We know that this was not the case; some of it went to pay rent on the marital residence.

transaction, this is the negative certainty that the prospects for the elimination of the benefit no longer depend upon the zeal and resources of other particular individuals, but now depend on the effective accomplishment of the statutory duties of the person appointed to represent the estate. For the parties that would benefit from the nullification of the transfer or transaction, bankruptcy injects the certainty that this benefit will be realized as part of the bankruptcy process. Procedurally, the bankruptcy system provides for a re-examination of transactions and occurrences which may have been otherwise fully consummated in law, perhaps even forgotten.[2]

To the extent that the New York Debtor and Creditor Law is implicated by virtue of 11 U.S.C. § 544, the Court must "pretend" that such an action was in fact filed <u>on the date of the Debtor's petition</u>, but for the benefit of <u>all</u> creditors (under *Moore v. Bay* 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931). Here we also have 11 U.S.C. § 548, which is applicable only in bankruptcy proceedings. And the term "transfer" is a defined term under the Code.[3] There can be no doubt that a "transfer" occurred, but that does not end the inquiry.

Accepting as true the Defendant's representations that all of the money went to payment of the Debtor's creditors, it is clear that not all creditors were paid; the "<u>un</u>chosen" creditor is the beneficiary of §§ 544 and 548. (The "chosen" creditor might become a

---

[2] Kaplan, Michael J., 9 Am.Jur. 2d, *Bankruptcy*, Section 1 (1979 edition, now out of print).

[3] 11 U.S.C. 548(d)(1), effective at the time this case was filed, states: For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition. 11 U.S.C. 548(d)(1) (2005).

And 11 U.S.C. 101(54), effective at the time this case was filed, states: "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption . . . . 11 U.S.C. § 548(d)(1)(2005).

"preference" target under § 547.)

Though it might be interesting to know who did or did not get paid in part or in whole while the $48,000 was under the Defendant's control, it is irrelevant under the law.

However, the quoted text above does not address an interesting question presented by this case. As already noted, a creditor of the debtor who learned of the sale of the house and the transfer of the proceeds to the wife promptly after it happened, and who promptly commenced a fraudulent transfer action under the Debtor and Creditor Law of the State of New York surely would have been entitled to a judgment against the wife to the extent necessary to satisfy the debt owing that creditor, in whole or in part. (Presuming "insolvency.") That did not happen. And the bankruptcy filing did not occur until after (possibly) all of the transferred proceeds were utilized in an effort to sustain the debtor's business and so to seek to repay all of his creditors. Neither 11 U.S.C. § 544 nor 11 U.S.C. § 548 vest the Trustee with avoidance rights "as of the date of transfer." Rather, they explicitly vest the Trustee with avoidance rights "as of the date of the filing of the petition." In the usual fraudulent transfer case, this distinction does not make a difference because the transferred property is either still in existence or has been commingled or expended for the <u>transferee's</u> benefit, and so must be disgorged. Does the fact (if it is indeed the fact) that all of the transferred money was used for the transferor/debtor's business purposes before the date of the filing of the petition make a difference? Would that fact (if it is so) sustain the defendant's argument that there had been no "transfer" at all?

If one accepts, as true, all of the defendant's representations about the disposition of the money, then one is led into the intriguing question of whether there would be a fraudulent

transfer if instead of handing the money over to his wife, the debtor had instead handed it over to a *de jure* trust exclusively for the benefit of creditors. Had there been a *de jure* trust for benefit of creditors that was completely depleted for the benefit of creditors by the time of the filing of the bankruptcy petition, would the Trustee be entitled to a recovery under either 11 U.S.C. § 544 and the Debtor and Creditor Law of the State of New York, or 11 U.S.C. § 548?

In the jurisprudence under 11 U.S.C. §§ 547 and 548, there is a well-developed doctrine of transferees (under 11 U.S.C. § 550) who are "mere conduits," and therefore not themselves liable for recovery, and this doctrine sometimes recognizes that transfers only of <u>possession</u>, are distinct from transfers of dominion and control.[4]

In a different context, this Court held (in *Wallach v. Kurowski supra*) that where the alleged fraudulent transfer at issue seemed to be a payment by the debtor of a loan received by the non-debtor principal of the debtor, it is an element of the fraudulent action that the Trustee establish that the proceeds of the loan were not received by the debtor who repaid what seemed to be the debt of the principal. Arguably, we are presented with the "flip side" of this scenario. The defendant argues that after the fraudulent transfer, she devoted the transferred proceeds to the transferor and his creditors.

In the preference context, this would be called the "new value" defense. 11 U.S.C. § 547(c)(1). As was noted in *Skalski supra*, something akin to that is found in 11 U.S.C. § 548(d)(2)(A), though not in the N. Y. Debtor and Creditor Law. In general, § 548

---

[4] See 3B Bankr. Service L.Ed. § 35:192 (acts, factors and circumstances constituting "mere conduit" examined under § 550(a)).

addresses transfers for which the Debtor "received less than a reasonably equivalent value in exchange." But in defining the term "value," subsection (d)(2)(A) of § 548 recites that the term "means property, satisfaction or securing of a present or antecedent debt of the debtor, but does not include an <u>unperformed</u> promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A). The use of the term "unperformed," in a double or triple negative, seems to recognize that events between the date of the transfer and the date of the filing of the petition are indeed important where it is alleged that the consideration for the transfer was a promise to furnish future support to the debtor. But only as to 11 U.S.C. § 548. As the *Skalski* decision points out, New York case law is well settled that a promise of future support, performed or unperformed, cannot provide consideration for a fraudulent transfer under the New York Fraudulent Transfer provisions. This appears to be an important difference between the Trustee's cause of action under 11 U.S.C. § 544 and his cause of action under 11 U.S.C. § 548, in this case.

    Because the Trustee's "statement of undisputed facts" acknowledges that the $48,000 was made available for both the ordinary household expenses of the debtor and his business endeavors, it would seem to the Court not only that the Trustee's Summary Judgment Motion must be denied to the extent that it is premised on 11 U.S.C. § 548, but that, indeed, the Court could[5] award summary judgment in favor of the defendant on that cause of action, even

---

[5]"Could" is used rather than "should" or "must" because it is not clear whether there was a "promise of future support" here, for §548(d(2)(A) purposes. When this writer contemplates the meaning of that phrase, what comes to mind is the elderly person, living on Social Security, who deeds her house to her children, who will then take over all of her upkeep costs - - mortgage and tax payments, maintenance and repairs, etc. What does <u>not</u> come to mind is an active, productive businessperson who transfers the house (or cash, as here) to a spouse on an understanding that it will continue to be available for various needs of the marriage and of the transferor. The meaning of the phrase remains to

though it has not been sought.  (See the case of *Stern & Barker v. Augostini, (In re Augostini)*, AP 01-1449 B, (N.Y.W.B. Apr. 4, 2002 Bucki, B.J.); *aff'd* 02 CV 0343 E, (N.Y.W.D. Sept. 23, 2002, Elfvin, S.J.), establishing that the Court may award summary judgment in favor of a party who has not sought it.)

However, the Trustee's Motion for Summary Judgment did not rest only on 11 U.S.C. § 548, but also on 11 U.S.C. § 544 and the New York State fraudulent transfer law, which contains no such "new value" defense.

Putting aside Congress' decision to recognize fully-performed promises of future support as "value" for § 548 purposes, one can readily understand why state fraudulent transfer law would not recognize a "new value" defense to a fraudulent transfer.  There is simply too much opportunity for mischief if each defendant in a fraudulent transfer action under State Law is entitled to be heard on the various ways in which the transferee benefitted the creditors of the transferor after, rather than before, the transfer was made.

Given the well-established law of fraudulent transfers governed by the laws of the State of New York, as explained in the cases cited above, the temporal aspect that this case presents seems irrelevant.

This might seem inequitable, but the matter is governed by law, not equity.

On the other hand, even State Law causes of action that are pursued by a Trustee under 11 U.S.C. § 544, are explicitly governed by 11 U.S.C. § 550, and it is essentially under § 550 that the doctrines of "mere conduit" and transfer merely of "possession" rather than

---

be argued, if necessary, after the § 550 fact issues surrounding the transfer are tried, as is ordered below.

transfer of "dominion and control" have evolved.

The text of 11 U.S.C. § 550 is largely opaque despite the enormous substantive effects of the particular verbiage that defies understanding.  The "initial transferee" of a fraudulent transfer is foreclosed from raising defenses such as "good faith," whereas "any immediate or mediate transferee of such initial transferee" has several defenses.  (Contrast 11 U.S.C. § 550(b), which applies only with reference to an "immediate or mediate transferee," with § 550(a).)

And so the doctrines of "mere conduit," etc., have evolved around such questions as that of whether a bank which innocently received a fraudulent transfer simply by virtue of the fact that the transferor had a bank account there, was a "transferee" at all, or a "mere conduit" or "mere possessor," without "dominion and control."[6]  Money laundering schemes have also been the subject of such discussion in the cases because they often involve innocent participants; this is often "by definition," because often it is the innocence of the participant that actually "launders" the money.[7]

The Defendant's argument that there "really was no transfer at all," given the post-transfer uses of the money, is consequently a § 550 argument, regardless of whatever New York State Fraudulent Transfer Law might say.  Therefore, even though the Court is satisfied that in a fraudulent transfer action under New York State Law this particular defense asserted by

---

[6] E.g.  *In re Chase & Sanborn Corp.,* 848 F.2d 1196, 1202 (11th Cir. 1998) (when goal of avoiding powers is considered, *U.S. v. Bailey,* 444 U.S. 394 (1980), fairness places limits on parties from whom trustees are allowed to recover, such as parties acting as mere conduits).

[7] *See In re Sia*, 349 B.R. 640 (Bankr. D. Haw, 2006) (comparing cases where bank is and is not innocent from § 550 transferee status in money laundering setting).

the Defendant cannot be heard, the § 550 question remains to be addressed, and it is a matter unique to bankruptcy.

It is the Court's view that a triable issue of fact has been raised by the Defendant as to whether she is a person against whom recovery is permitted under 11 U.S.C. § 550. (It is a mixed question of law and fact.)

Although this ruling defeats the motion before the Court, it is also a function of Rule 56 to narrow the issues to be tried, and so the Court will address the "solvency" defense.

The Trustee argues that the Chapter 7 estate is entitled to a presumption of insolvency, as a matter of law, because this was a spousal transfer without consideration. He cites this Court's decision *In re Cardon Realty*, 146 B.R. 72, which so ruled. This court again so rules. However, the Defendant argues that the Debtor's claims against the LLC and the Roth Estate make the matter of solvency a triable issue of fact. Because the § 548 argument must fall, it is only the State Law definition of "insolvency" that need be addressed for present purposes.

Debtor and Creditor Law § 271 expressly states: "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." N.Y. Debt. & Cred. § 271(1) ( McKinney's 2006). Thus, it is a "balance sheet" test, not the "inability to pay debts as they fall due" test (i.e., "equitable insolvency" test), such as is contained in 11 U.S.C. § 303(h)(2).

The Trustee asserts that the Defendant's mere recitation of the fact that in September of 2005, the Debtor actually did commence a State Court, Third-Party action against,

*inter alia*, the Roth Estate, seeking $ 704,000, does not suffice to rebut the presumption of insolvency.

Because that was a Third-Party Action, commenced in response to a trade creditor's complaint against the Debtor, the Court presumes that the entire action was stayed by the Debtor's Chapter 7 filing, and the court has no knowledge of whether the Trustee has made any determination about the wisdom of pursuing that the Third Party Complaint, or any other claim against the Third Party Defendants.

Although the Court agrees with the Trustee that the Defendant has made no offer of "concrete particulars" regarding the "fair saleable value" of Debtor's claims against the LLC, the Roth Estate, etc., the court is disinclined to foreclose any further submissions by the Defendant in this regard. This is not yet to say that this is a "triable issue" of fact, but rather the Defendant should be given a further opportunity to "flesh-out" her effort to rebut the presumption of insolvency as of the time of the transfer. (This may be extremely difficult for her to do,[8] but such is the purpose and operation of "presumptions" at law.)

## CONCLUSION

(1) Summary Judgment on the Trustee's § 548 cause of action is denied.

(2) The Trustee's assertion of "actual fraud" is not susceptible of resolution on the

---

[8] Perhaps it is not so hard. Perhaps there were meaningful financial records issued for use by the "founders;" or meaningful appraisals in connection with bank loan applications by the LLC; or "due diligence" materials offered-up to the "founders" by the prospective purchasers for the project after Mr. Roth's death. If so, some of these might be competent, admissible evidence. Similarly, although it seems that the "founders" participated in a "private placement" or "private offering," not subject to state or federal regulation, the offering process may have included a document not unlike a "prospectus" or "proxy statement."

record before the court, and this Motion is denied in that regard.

   (3) The Defendant shall have 30 days to at least <u>proffer</u>, in good faith, a Supplemental Response to the Trustee's Motion, as to the issue of the "fair saleable value" of the Debtor/Transferor's claims against the LLC, the Roth Estate, etc., as of the time of the transfer of the $48,000.

   (4) The issue of whether the Defendant is a party against whom the Trustee may recover, under 11 U.S.C. § 550, for any fraudulent transfer that he might establish under his State Law causes of action, includes a triable issue of fact.

   This matter is restored to the calendar for "Report" on <u>January 9, 2007 at 2:30 p.m.</u> at the Genesee County Courthouse, Third Floor Courtroom, 7 Main Street, Batavia, NY.

   SO ORDERED.

Dated:  Buffalo, New York
    December 4, 2006

              s/Michael J. Kaplan
              _____
              U.S.B.J.